UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LACI LINDSEY, | |
| Petitioner, | |
| v. | CAUSE NO. 3:24cv555 DRL |
| | 3:22cr52 DRL |
| UNITED STATES OF AMERICA | |
| Respondent. | |

OPINION AND ORDER

Laci Lindsey, a prisoner without a lawyer, filed a *pro se* petition to vacate or correct her sentence under 28 U.S.C. § 2255 and to appoint counsel. After reviewing the record and conducting an evidentiary hearing on one issue, the court grants the § 2255 in one part, affords her additional time to perfect a timely direct appeal, and otherwise denies the petition.

BACKGROUND

Ms. Lindsey sold nearly 750 grams of methamphetamine to a confidential source. She sold a total of 295 grams from her house over five occasions. Lab testing from one sale confirmed it to be 100 percent pure. She also facilitated a purchase of one pound (441 grams) of methamphetamine, coordinating contact between the confidential source and her supplier, then driving the supplier to the buy. Testing determined it was 99 percent pure. Law enforcement's search of her house located methamphetamine, a ledger, scale, baggies, and other paraphernalia.

On July 13, 2022, she was indicted for distributing 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A). On March 22, 2023, she pleaded guilty to the charged offense with a plea agreement. For sentencing, she asserted four objections to the

presentence report, including to the drug quantity calculation and to the drug premises enhancement. Trial counsel failed to file a sentencing memorandum by the deadline, and the court (then presided by Judge Robert L. Miller, Jr.) denied an extension.

At the July 10 sentencing, the court gave Ms. Lindsey and trial counsel additional time to review the presentence report together because she had not yet received it [112 Tr. 2-4]. The court overruled her objections to the drug quantity calculation and drug premises enhancement and sentenced her to 80 months imprisonment, a downward variance from her guideline range of 108-135 months. She did not appeal. In February the next year, Ms. Lindsey asked for a sentence reduction under Amendment 821; the court appointed her a federal public defender and ultimately denied the motion because her sentence was lower than the low end of the new guideline range that incorporated the offense level decrease for zero-point offenders.

Ms. Lindsey filed this § 2255 petition on July 8, 2024. The government responded on August 22, 2024, and she filed her reply on October 4, 2024. She moved a second time for compassionate release (a sentence reduction) on March 10, 2025 (addressed by separate order).

On April 10, 2025, the court determined an evidentiary hearing was needed to evaluate a portion of Ms. Lindsey's § 2255 petition—that her trial counsel failed to file an appeal after being asked to do so. *See Garza v. Idaho*, 586 U.S. 232 (2019); *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). The court appointed counsel to represent her at the hearing for this limited purpose.[1] *See* 18 U.S.C.

---

[1] The court thus granted her motion for counsel in this lone respect. Outside of an evidentiary hearing, there is generally no right to counsel in § 2255 proceedings. *Rauter v. United States,* 871 F.2d 693, 695 (7th Cir. 1989). In determining whether a court should exercise its discretion to appoint counsel, courts consider whether, "given the difficulty of the case and the litigant's ability, she could not obtain justice without an attorney, she could not obtain a lawyer on her own, and she would have had a reasonable chance of winning with a lawyer at her side." *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997); *see Moreland v. Eplett*, 18 F.4th 261, 272 (7th Cir. 2021). The other issues, for reasons articulated in this opinion, she ably presented otherwise.

2

§ 3006A; Rule 8(c) of Rules 2 Governing Section 2255 Proceedings. On June 13, the court held an evidentiary hearing on her *Garza* claim.

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of habeas corpus is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to such relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202-03 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle her to relief. *Torres-Chavez*, 828 F.3d at 586; *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific won't suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show the petitioner isn't entitled to relief, the court needn't hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016).

DISCUSSION

Ms. Lindsey challenges her sentence on grounds of ineffective assistance of counsel. Although she waived much of her right to appeal or contest her conviction in her plea agreement, she retained a right to contest her conviction or sentence on this basis.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel—including the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To show a violation of this right, a petitioner must establish that (1) her counsel's performance was deficient, and (2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A defendant's failure to satisfy either prong is fatal to [her] claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *see also Strickland*, 466 U.S. at 697; *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted).

A. *Change of Plea.*

Ms. Lindsey says trial counsel inadequately informed her of the allegations and evidence against her, including by failing to provide her with discovery, such that she could not understand what the government accused her of doing. For one, her claim is contradicted by her plea agreement, in which she confirmed trial counsel informed and advised her about the nature and cause of the accusations against her and any possible defenses. She reported, under oath, that she read and reviewed the plea agreement with trial counsel before she signed it [111 Tr. 5-6].

For another, her claim is belied by her other sworn statements at the plea hearing, "which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). The court reviewed, and she said she understood, the allegations against her, what the government would

4

need to prove to secure a conviction, and the factual basis for the plea [111 Tr. 4-7, 12-13]. Finally, she confirmed at her plea hearing that trial counsel had done all anyone could to assist her, that she was satisfied with the job he had done for her, and that he didn't do anything other than what she wanted [111 Tr. 5; *see also* 71-1 ¶ 11]. Statements at a plea hearing are made under oath, so the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to [her] admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quotations and brackets omitted). She cannot show deficient performance or prejudice here.

Ms. Lindsey also claims that trial counsel ignored and failed to investigate the relevant facts ahead of her change of plea such that she was forced to sign her plea agreement under duress. But she presents this argument for the first time in her reply brief, and arguments in support of a § 2255 motion first raised in reply are waived, even if offered by a *pro se* petitioner. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). Even if not waived, she said, once more under oath at her plea hearing, that she was satisfied with her trial counsel's representation [111 Tr. 5; *see also* 71-1 ¶ 11]. She also confirmed that she pleaded guilty voluntarily and that no one had used any threats or force to get her to plead guilty [111 Tr. 10-11; *see also* 71-1 ¶ 12].

Finally, though not raised in her petition, Ms. Lindsey said at the evidentiary hearing that she was told to expect a sentence of about 40 months and was surprised when she received a longer sentence. She doesn't argue she wouldn't have pleaded guilty had she understood her sentence could be longer, and such an argument would be waived, *see Wright*, 139 F.3d at 553, but she did say she took the plea based on her expectation. Argument and waiver aside, she doesn't present a basis on which the court should credit these statements more than those she made under oath at the plea hearing—namely, she confirmed that no promises had been made to her

5

other than those in her plea agreement, that she understood her sentence could potentially be any reasonable sentence between 10 years and life, and that nobody could say for sure what her sentence would be [111 Tr. 8-10]. The court thus must deny her § 2255 petition without a showing of deficient performance or prejudice, for the court has every reason to credit her sworn statements at her plea.

B. *Sentencing.*

First, Ms. Lindsey argues counsel failed to submit objections to the presentence report, specifically to the drug quantity calculation and drug premises enhancement [107-1 ¶ 2, 6]. But he filed these objections [84] and argued them at sentencing [112 Tr. 4-11], so his performance wasn't deficient on this basis. The court considered and overruled the objections [*id.* 14-16]. It wasn't a breach of the plea agreement. To the extent she argues the court's decision was wrong, that is an appeal issue, and § 2255 is no substitute. *See Doe*, 51 F.3d at 698.

Second, she argues trial counsel was ineffective because he didn't submit character letters or programming certificates for the court's consideration at sentencing [107-1 ¶ 3]. She says this lapse may have given the court the impression that she didn't care. She hasn't submitted the letters or certificates, described what they say, or explained why the court would have reached a difference sentence had they been read, particularly when she received a variance already. That said, this presider views character letters and programming certificates as important and regularly receives and reads them in deciding a sentence under 18 U.S.C. § 3553(a), and this presider knows all too well that the prior judge likewise considered such submissions seriously.

Whether trial counsel's failure to submit character letters or programming certificates was deficient performance, and it would be difficult to see it as anything but deficient, Ms. Lindsey cannot show prejudice because she hasn't demonstrated how they might have changed the case's

6

outcome—namely, the court's sentence. *See, e.g.*, *Holmes v. United States*, 2019 U.S. Dist. LEXIS 85500, 32-34 (E.D. Va. May 21, 2019) (character letters); *Ingle v. United States*, 2011 U.S. Dist. LEXIS 60503, 11-13 (N.D. Tex. June 6, 2011) (same); *see also Strickland*, 466 U.S. at 687 (affidavits would have basically said defendant was a "good person," and the defendant had spoken to this already).

The court considered her personal history, physical health, mental health, and substance abuse history in deciding her 80-month sentence (28 months below her guideline range). Without the letters in hand, or some summary of their substance, the court cannot say it would have varied even more, and Ms. Lindsey doesn't argue how it would have. Whether the court had the right impression of how much she cared at sentencing, she used her allocution to apologize to her family, the court, and the community [112 Tr. 22], more contrition based on the transcript than this court hears from many who come before it. The court finds no prejudice here.

Third, Ms. Lindsey says she wasn't given her presentence report before sentencing and had an inadequate opportunity to discuss possible objections [107-1 ¶ 4]. But the record contradicts these arguments. Whether Ms. Lindsey received the presentence report ahead of her sentencing, the court gave her time to review it with counsel, and she confirmed they were able to review it and the proposed supervision conditions in full [112 Tr. 2-4]. These statements in open court and under oath carry "a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and the federal rules just require that she receive the report "for some period of time," *United States v. Melvin*, 948 F.3d 848, 853 (7th Cir. 2020); *see also* Fed. R. Crim P. 32(e)(2). Given her review with trial counsel and her confirmations that she had enough time, Ms. Lindsey cannot show she was prejudiced by counsel's failure to ensure she had access to the presentence report ahead of her sentencing hearing, even if most trial counsel wisely handle this beforehand.

7

Fourth, Ms. Lindsey disputes the presentence report's characterization of why she was motivated to use drugs on certain occasions—she says it was due to mental health challenges [107-1 ¶ 5]. She doesn't say this is trial counsel's fault, so this isn't really an ineffective assistance claim and would be barred by the plea agreement's waiver. To the extent she means to say he was ineffective for failing to object to this part of the presentence report, she nowhere argues her sentence would be different had he made the objection or otherwise shown how she was prejudiced. Nor could she—as discussed above, the court considered her mental health struggles when it varied below her guideline range at sentencing. The presentence report linked her methamphetamine use to emotional trauma, and the court adopted this as one of its findings [¶ 89]. She too, in allocution, had the same ability to address this subject if in fact she wanted the court to hear even more than it did. Without a showing of prejudice, she cannot establish ineffective assistance at sentencing.

C.  *Failure to File Direct Appeal.*

Ms. Lindsey says trial counsel failed to appeal her case when she asked him. In her verified petition, she said a request was made to her counsel the day of sentencing, and he denied her request by saying "he did his job." In truth, he didn't.

Her plea agreement contained an appeal waiver [71-1 ¶ 9(e)], but she waived "only [her] ability to raise certain claims on appeal" and not her "right to *file* a notice of appeal." *United States v. Watson*, 48 F.4th 536, 539 (7th Cir. 2022). When a criminal defendant specifically instructs her lawyer to file a notice of appeal, the lawyer's failure to do so constitutes ineffective assistance of counsel. *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011) (citing *inter alia Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)); *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010)). This is the case "regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, 586 U.S. 232,

8

243-44 (2019). "To succeed on such a claim, however, a defendant must show that [she] actually requested [her] attorney file an appeal." *Gant*, 627 F.3d at 681.

When a defendant has not asked counsel to appeal (or asked him to forgo an appeal), the court must evaluate whether counsel has consulted with the defendant and, if not, whether counsel's failure to consult constitutes deficient performance in a given case. *Flores-Ortega*, 528 U.S. at 478. "Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [she] was interested in appealing." *Id.* at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* Counsel "consults" with a defendant when he advises the defendant about the "advantages and disadvantages of taking an appeal" and makes "a reasonable effort to discover the defendant's wishes." *Id.* at 478. To show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed." *Id.* at 484.

Ms. Lindsey must establish to a preponderance of the evidence that she has been deprived of this right. *See Hearn v. United States*, 194 F.2d 647, 649 (7th Cir. 1952). She claimed her trial counsel failed to file a notice of appeal after she requested one the day of sentencing (something she said under oath). She elaborated that she made the request through her daughter when trial counsel would not take her calls (a statement she made in briefing and not under oath). Notwithstanding certain minor errors in recall (for instance, she had the date of sentencing wrong), her petition justified an evidentiary hearing on this sole issue. *See Torres-Chavez*, 828 F.3d

9

at 586; *see also* 28 U.S.C. § 2255(b). Ms. Lindsey presented her own testimony and testimony from her daughter (Misty Hurley)[2] and her trial counsel (Vincent Campiti).

No one testified that Ms. Lindsey directly asked trial counsel to file an appeal, at least not until November 2023 when he was representing her in another matter and the time to appeal had long passed. The record nonetheless sufficiently establishes other prevailing truths—that trial counsel knew of Ms. Lindsey's desire to appeal and that he failed to consult with her about filing one, either by discussing its advantages and disadvantages with her so she could make an educated decision or by making any reasonable effort to understand her wishes to pursue or decline one after that consultation. *See Flores-Ortega*, 528 U.S. at 478, 480. Indeed, this record reveals a troubling lack of consultation between counsel and client.

In the ensuing moments after sentencing on July 10, 2023, trial counsel had no such discussion with Ms. Lindsey. Ms. Lindsey credibly testified that he never discussed with her the advantages and disadvantages of taking an appeal—whether in person, by letter, or over the phone. For his part, Mr. Campiti could recall very little and seemed unenthusiastic in endeavoring to recall, thereby offering nothing of real substance to contest Ms. Lindsey's point of view. When asked whether he discussed an appeal with her at sentencing, he said, "I don't see why I would." He could not recall visiting her in jail, could not recall speaking with her another way, and could not recall much at all. Indeed, he admitted having "no real memory" of his representation (he could not even remember her charge). Of course, the court understands (both generally and from

---

[2] Ms. Hurley called Ms. Lindsey "kind of like [her] god mom." During the hearing, she responded to questions that described Ms. Lindsey as her mother, and Ms. Lindsey referred to Ms. Hurley as her daughter. For simplicity, the court here refers to Ms. Hurley as Ms. Lindsey's daughter just as they describe the relationship.

the presider's own experience as trial counsel) that a lawyer will not remember every detail of each case he has handled in the past, but the limited recall here was noteworthy.

Based on the collective testimony, the corroboration the record affords, and the demeanor of witnesses—for instance, Ms. Hurley certain, precise, yet willing to concede when she could not affirm a fact that might be important to her mother, versus Mr. Campiti as imprecise overall in his flagging memory and at times seemingly indifferent—it was uncontroverted that Ms. Lindsey asked Mr. Campiti to file an appeal through her daughter. Both Ms. Lindsey and Ms. Hurley testified that one asked the other to communicate the desire to appeal to Mr. Campiti the day of sentencing. According to Ms. Hurley, he replied that there was nothing more to do, the judge had made up his mind, and there was no point in filing the appeal. Mr. Campiti could not recall this conversation; nor could he dispute it, for he admitted he talked frequently with Ms. Lindsey's son and daughter about his representation of Ms. Lindsey.

Ms. Lindsey and Ms. Hurley testified that, after Ms. Hurley relayed the details of her conversation with Mr. Campiti to her mother, Ms. Lindsey still wanted to appeal. They could not identify other means. Instead, they both made additional attempts to contact Mr. Campiti about filing an appeal. Ms. Lindsey said she tried to call Mr. Campiti on his cellphone the week after her sentencing, but she could not reach him (or get connected to his voicemail). Ms. Hurley instead spoke again with Mr. Campiti, either one or two weeks after the sentencing, and asked him to file an appeal once more. This time, he said he had run out of funds and that he was done with the case. Nothing on this record suggests he made any attempt to consult with Ms. Lindsey about the prospects or downsides of appealing; and, if his apathy on the stand is any reflection of the regard he gave a client's interest in an appeal, then their account isn't difficult to credit.

11

The only fact that Mr. Campiti seemed certain to want to state under oath was that nobody told him to file an appeal—perhaps easy for him to say when he has not returned his client's call and not attempted to consult with his client or divine her wishes after being told twice, through someone he understood after some history to be in the know, that she expressed interest in appealing. In turn, the court cannot say his decision merely to forgo an appeal, as communicated only through Ms. Lindsey's daughter, was a proper consultation.

Putting aside best practice to consult routinely with one's client about an appeal in a criminal case, *Flores-Ortega*, 528 U.S. at 479, Mr. Campiti had matters to discuss with Ms. Lindsey. She thought her sentence too long, and she disagreed with the guideline enhancements. Perhaps there were other matters to discuss, but these were her early worries. Although certain ones undoubtedly would have been covered by her appeal waiver in her plea agreement, another may not have been. *See, e.g., Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018); *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). And though the court today might have every confidence in the prior presider's handling of procedures, sentencing objections, and the like, one cannot be intelligently educated on the pros and cons of appeal when there has been no consultation. In short, Ms. Lindsey reasonably demonstrated to Mr. Campiti her interest in an appeal, and he was deficient in his work by not consulting with her.

To show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed." *Id.* at 484. This position has been consistently maintained by Ms. Lindsey, corroborated by Ms. Hurley, and left undisputed by Mr. Campiti. Ms. Lindsey shows that she reasonably would have pursued an appeal, and in a timely way. The court thus will grant Ms.

Lindsey's § 2255 petition in this lone respect and afford her an additional 14 days (until July 8, 2025) to file a notice of appeal.

D. *New Evidence.*

Ms. Lindsey last argues that she has new evidence. She says both studies and courts (without citing either) reject the idea that a person's culpability should be tied to the purity of the methamphetamine one distributes. In her plea agreement, she waived the right to contest her conviction based on anything but ineffective assistance of counsel. She has waived this point.

Even on the merits, cases critiquing how the guidelines treat methamphetamine purity aren't really new evidence. These views are well known, and courts have addressed and rejected them many times, this court included. *See, e.g.*, *United States v. Bostock*, 910 F.3d 348, 350-51 (7th Cir. 2018); *United States v. Pearson*, Cause No. 3:24cr35, ECF 42 (N.D. Ind. Feb. 25, 2025); *United States v. Elkins*, 2020 U.S. Dist. LEXIS 269815, 4-7 (N.D. Ind. Feb. 4, 2020). The court cannot say the failure to raise such an argument, even if Ms. Lindsey had couched this as ineffective assistance, was deficient performance by her trial counsel, much less that it would have changed anything in the outcome of her criminal proceeding. Indeed, it would not be probable that the prior presider, a veteran district judge of more than 45 years at the time of her sentencing, was unfamiliar with these views that had been circling by then for many years.

## CERTIFICATE OF APPEALABILITY

Setting aside Ms. Lindsey's claim concerning her trial counsel's failure to file an appeal, she otherwise fails to offer facts that, if proven, would entitle her to relief on her remaining claims. As such, no hearing is necessary, and those claims are denied. *See Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020); *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015).

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). For the reasons given, reasonable jurists could not debate the conclusions today. Ms. Lindsey has plainly not shown an entitlement to § 2255 relief in specific respects, and she has demonstrated and received relief for her direct appeal. The court thus denies a certificate of appealability.

## CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART Ms. Lindsey's § 2255 petition [107], GRANTS her 14 days (until July 8, 2025) to file a notice of appeal, and otherwise DENIES her petition.

SO ORDERED.

June 24, 2025          *s/ Damon R. Leichty*
                       Judge, United States District Court